[Civ. No. 4570. First Appellate District, Division Two.—August 15, 1923.]

In the Matter of the Estate of AUGUSTA M. HEWITT, Deceased. AIMEE BOTCHER et al., Appellants; KENNETH HEWITT, Respondent.

**[1]** WILLS—CONTEST—REFUSAL TO WITHDRAW UNSUPPORTED ISSUES— GENERAL VERDICT—ERROR.—In the contest of a will found after the death of the testatrix in a mutilated condition, where the first four grounds of contest related to the execution of the will, including the subscription, acknowledgment and publication thereof by the testatrix and the attaching of the signatures thereto by the witnesses, and the only two other grounds related alone to the mutilation or cancellation of the will, and no evidence was offered by the contestant to sustain the issues as to the execution of the will, these latter issues should have been withdrawn, upon motion by the proponents for nonsuit, from the consideration of the jury, and the one issue relating to the mutilation or cancella-

tion of the will should have been submitted to the jury in such a way that the jury could have rendered a special verdict upon that issue, a general verdict not being permissible under such circumstances.

[2] FINDINGS—ISSUES—WAIVER.—Where the statute is mandatory, the right to a special finding on an issue is not waived by a failure to request it.

[3] WILLS — CONTEST OF MUTILATED WILL — ASSUMPTION OF FACTS NOT PROVED—OBJECTIONABLE INSTRUCTION.—In a contest of a will found after the death of the testatrix in a mutilated condition, an instruction telling the jury in effect that where a will remains in the testator's possession until his death, and is then found among his papers with alterations or cancellations, the presumption is that such act was done by the testator with the intention of revocation, and this presumption must be overcome by positive evidence that it was not done by the testator or was not done with such intention, and also telling the jury that if such will "has remained in the maker's possession and is destroyed or mutilated unless there is positive proof tending to show that the mutilation or destruction was accidental or done by another, then the presumption is, as stated before, that the maker mutilated or destroyed his own will and there is a further legal presumption that he did it *animo revocandi* or with intent to revoke," and further telling the jury that "where it appears from the testimony that no third party ever had custody of the will then an inference that anyone other than the testator mutilated such will can be raised only by direct and positive evidence as to the act of a third party," was objectionable in that it assumed that the will remained in the testatrix's possession until her death, that it was then found among her papers, and that no third party ever had custody of the will, when there was no evidence of such facts.

[4] ID.—PRESUMPTION — INFERENCE — INSTRUCTION.—Such instruction was objectionable in that the word "presumption" was erroneously used therein instead of the word "inference."

[5] ID.—DEGREE OF PROOF—INSTRUCTION.—Such an instruction was also erroneous in the use of the words "direct" and "positive" as indicating the character of proof which the proponents were required to make.

[6] ID. — EVIDENCE—PRESUMPTION—REVOCATION.—In a contest of a will found after the death of the testatrix in a mutilated condition, upon proof by the proponents that within one month of the testatrix's death she declared that she had a will in which she left some of her property to the proponents and that she had executed no other will than the one offered for probate, the presumption found in subdivision 32 of section 1963 of the Code of

Civil Procedure, that a thing once proved to exist continues, arose to rebut the presumption of revocation.

[7] ID.—REVOCATION—REBUTTAL—EVIDENCE.—In such a contest, the proponents were entitled to have the jury consider, as tending to rebut the presumption of intentional revocation by the testatrix, the circumstances that no essential part of the will had been eliminated, but that after the clause appointing executrices had been clipped out, the testatrix's signature, attestation clause, and witnesses' signatures had been carefully preserved, and that the will had not been in the exclusive custody of the testatrix, that it had not been found among her papers or in the usual depository for her papers, but that it was found long after her death in a closet belonging to and used by the contestant.

[8] ID.—USE OF INDIRECT EVIDENCE — INSTRUCTION — PREJUDICE.—In such a contest, the proponents were entitled to an instruction relating to the use of indirect evidence in view of what had already been given relating to the presumptions in favor of the contestant, and the refusal to give such an instruction was prejudicial to proponent's cause.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Reversed.

The facts are stated in the opinion of the court.

Vincent W. Hallinan for Appellants.

O. C. Wilson for Respondent.

NOURSE, J.—This is an appeal from a general verdict in favor of contestant in a proceeding for the probate of a will. Mrs. Hewitt died on March 17, 1921, leaving an estate valued at about two hundred and fifty thousand dollars. She left surviving her Kenneth Hewitt, a son, the contestant herein, and Aimee Botcher and Florence B. Towle, sisters, the proponents herein, and a brother, Fred McCune. On January 26, 1909, she executed the will offered for probate wherein she left approximately two-thirds of her estate to her son, and the remainder, less some minor bequests, to her two sisters. The will consisted of four typewritten pages bound together and backed. It was apparently executed in

---

7. Effect on will of canceling, obliterating or destroying particular clause, note, Ann. Cas. 1912D, 174.

due form in the presence of two witnesses and signed by the testatrix at the bottom of the first three pages as well as at the end of the final clause on the fourth page. It was found some four or five weeks after the death of the testatrix in a small bag belonging to the deceased which was hanging on the knob of a door which had been removed from its hinges and stood in a hall clothes-closet on the first floor of the home where the testatrix and her son resided at the time of her death and for some ten years prior thereto. The will was found by one of the proponents while the two were clearing up that portion of the house during the absence of the contestant but under his sanction. The bedrooms on the upper floor of the house were under lock and seal, having been so left by the contestant before his departure. One of these sealed rooms contained a secretary belonging to the deceased in which she had kept her papers and other valuables. Prior to the death of the testatrix the will had been kept in a safe-deposit box to which the testatrix and her son had joint access. No testimony was offered to show when or by whom it was removed from this depository and no witness was called to testify that he had ever seen the will before its discovery by these proponents. When discovered it showed signs of mutilation, the signatures had apparently been cut away from the first three pages, and the clause naming executrices had been cut away from the third page. The pieces containing this clause and the three signatures were missing, but the attesting signature and the attestation clause with the signatures of the witnesses on the last page had been carefully preserved and attached in the proper place and folded in with the rest of the instrument.

Contestant laid out his case on the theory that the will having been found in a mutilated condition the presumption immediately arose that it had been mutilated by the testatrix and that from this presumption followed the other that the testatrix had mutilated it with the intention of revocation. The theory of the proponents was that the mere fact of mutilation was not proof of revocation, but that the jury was to draw its inferences from all the facts and circumstances in evidence.

On this appeal the proponents have presented many grounds for reversal, of which consideration need be given only to the following: (1) Error in denying the proponent's

motion for a nonsuit on certain issues and in receiving a general verdict; (2) Errors of the trial court in giving instructions and in refusing to give instructions requested by the proponents.

(1) The contestant opposed the probate of the will upon six separate assignments of contest. The first four grounds related to the execution of the will, including the subscription, acknowledgment, and publication thereof by the testatrix and the attaching of the signatures thereto by the witnesses. The fifth and sixth grounds related alone to the mutilation or cancellation of the will. **[1]** Upon the conclusion of contestant's case the proponents moved for a nonsuit upon the issues relating to the execution of the will upon the ground that no evidence had been offered to sustain them. The trial court denied the motion and required the proponents to proceed with their proof. They very properly refrained from offering any proof on the issues because the contestant had offered no evidence of any nature to support these grounds of contest. The motion for nonsuit should have been granted or, more properly, these issues should have been withdrawn from the consideration of the jury and the one issue relating to revocation of the will should have been submitted to the jury in such a way that the jury could have returned a special verdict upon that issue. (Sec. 1314, Code Civ. Proc.) This was not done, but the whole cause was left with the jury under an instruction which called for a general verdict in favor of contestant or proponents. The jury returned its verdict upon the form given it by the trial judge and which read: "We, the jury in the above-entitled cause, find a verdict in favor of the contestant (plaintiff)."

That such a verdict is not permissible under our probate practice seems well settled. (Sec. 1314, Code Civ. Proc.; *In re Langan,* 74 Cal. 353, 355 [16 Pac. 188]; *Estate of Benton,* 131 Cal. 472, 474 [63 Pac. 775]; *Estate of Gould,* 188 Cal. 353, 365 [205 Pac. 457].) In the latter case it is said: "The law requires a special verdict in a will contest . . . and a general verdict is unauthorized."

In the Langan matter the court said (74 Cal. 355 [16 Pac. 189]): "The general verdict was not authorized, and consequently furnished no support for the judgment. . . . We have, then, a case where there was simply a mistrial, and

where there was no lawful authority to enter any judg-
ment. . . . A judgment entered under such circumstances is
void, and may be set aside on motion."

In the *Estate of Benton, supra,* the issue involved was
whether the proponent had been guilty of fraud in procur-
ing the execution of the will. Numerous questions were sub-
mitted to the jury purporting to bear upon this issue and as
a result of the answers returned the will was denied probate.
The judgment was reversed upon the ground that these
questions called for answers upon probative facts only, and
that the ultimate fact whether the mind of the decedent, at
the time of the execution of the will, was free from fraud
practiced upon him by the proponent was not submitted to
the jury. In this connection the court said (131 Cal. 480
[63 Pac. 778]) : "The case then presents itself exactly as a
case where there is no finding of fact upon a material issue,
and the judgment must be reversed for that reason."

In *Holler* v. *Western Union Tel. Co.,* 149 N. C. 336 [19
L. R. A. (N. S.) 475, 63 S. E. 92], the supreme court of
North Carolina, in construing a similar statute, held that
it was the duty of the trial judge to submit such issues to
the jury as will enable it to dispose of the controversy and
proceed to judgment, and that this was true even though
the parties did not tender the issue for submission to the
jury. The theory of the case is the same as that of the
early California cases cited above that when the statute re-
quires a special verdict a judgment based upon a general
verdict is like a judgment without findings. The reason for
the rule seems to be that when a will is offered for probate
and is accompanied by all the necessary proofs of due
execution, it is the duty of the court to admit it to probate.
To deny probate some legal ground must appear and the
proponent is entitled to a specific finding of the ultimate
facts constituting such ground. **[2]** Where the statute is
mandatory, the right to a special finding is not waived by
a failure to request it.

(2) The attack upon the instructions is based mainly
upon the contention that too great a degree of proof
was required of proponents and that they were seriously
prejudiced by the court's refusal to give their proposed
instruction relating to the issue of the testatrix's intention
to revoke the will. Upon the first point the court, after

instructing the jury as to the meaning and effect of conclusive and disputable presumptions, gave the following instruction upon the request of the contestant: ''Where a will remains in the testator's possession until his death, and is then found among his papers with erasures, alterations, cancellations, or tearings the presumption is that such act manifest upon the will was done by the testator with the intention of revocation and this presumption must be overcome by positive evidence that it was not done by the testator or was not done with such intention. . . . A will executed by an individual is without any effect until the death of the individual making such will and during the entire life time of the maker it is his for the purpose of doing with it as he pleases, he can alter it, modify it, or revoke it at pleasure, and if it has remained in the maker's possession and is destroyed or mutilated unless there is positive proof tending to show that the mutilation or destruction was accidental or done by another, then the presumption is, as stated before, that the maker mutilated or destroyed his own will and there is a further legal presumption that he did it *animo revocandi* or with intent to revoke. . . . Where a will is shown to have remained continuously in the possession of the party who made it, no inference can be raised as to its mutilation or destruction by a third party by mere expressions of suspicion, but such an inference can only be raised by direct evidence as to the ability of the third party to so mutilate or destroy the will, and where it appears from the testimony that no third party ever had custody of the will then an inference that any one other than the testator mutilated such will can be raised only by direct and positive evidence as to the act of a third party.''

[3] The preliminary objection to the foregoing instructions is that the jury was told that certain presumptions arose under a certain state of facts which were not in evidence in this case. For instance, there was no evidence that the will remained in the testatrix's possession until her death, that it was *then* found among her papers, or that no third party ever had custody of the will. The uncontradicted evidence was that for some time prior to the testatrix's death the will was kept in a safe-deposit box to which the testatrix and her son, the contestant herein, had joint ac-

cess; that she died from tuberculosis after a long illness, during which time her son alone was able to enter the place of depository, and that a few days before her death he went to the deposit box at her request and took out some of her papers which he brought to her home. The evidence as to the time and place of discovery of the will was also uncontradicted. It was that the will was discovered some four or five weeks after the testatrix's death and not at the time of her death as inferred in the instruction. It was found in an open hall closet which was used by contestant and was not found among the testatrix's papers as stated in the instruction. The evidence was that the testatrix had in her room a secretary in which she kept many of her private papers; that a few nights before she died she handed the contestant certain papers directing him to place them in this secretary; that she requested him to examine all her papers in the presence of the two proponents after her death; but that, on the night following her death, the contestant secretly went to the secretary, removed therefrom papers belonging to the deceased and burned them; that he always refused to let either of the proponents examine any of the papers as directed by his mother.

On the facts, therefore, the case is not similar to those upon which the rule of law, however correct it may be, has been laid down—that when a will is found immediately upon the death of the testator among his private papers, or in his depository, and in a mutilated condition, having been continuously in the testator's possession until his death, the *presumption* is that it was mutilated by the testator himself *animo revocandi.* [4] It is hardly necessary to point out the error in the use of the word "presumption" instead of "inference." The code defines a presumption as "a deduction which the law *expressly directs* to be made from particular facts." (Emphasis ours.) (Sec. 1959, Code Civ. Proc.) An inference is "a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." (Sec. 1958, Code Civ. Proc.) The word "presumption" is employed in the statement of the rule by the careless disregard of this distinction. But some cases imply that it is a proper use of the term by first invoking the presumption mentioned in subdivision 1 of section 1963 of the Code of Civil Procedure, "that a person is

innocent of crime or wrong," and then, having assumed the innocence of all third parties, it is said that the testator, being the only one who could have rightfully canceled or mutilated the will, it must be presumed that he did so. But this, of course, overlooks the important elements of accident and mistake.

Here the trial court defined a presumption for the jury and instructed it that in cases involving the mutilation of a will there were certain presumptions which must be overcome by evidence of the proponents. In the instructions under consideration the jury was then told that the mutilation of the will must be presumed to have been the act of the testatrix and that this act must be presumed to have been done with the intention of revocation.

But more serious than all this was the measure of proof which the court required of the proponents. The jury was told that these presumptions could be overcome only by "*positive* evidence that it was not done by the testator or was not done with such intention." And again, "unless there is *positive* proof tending to show that the mutilation or destruction was accidental or done by another." And "where it appears from the testimony that no third party ever had *custody* of the will then an inference that any one other than the testator mutilated such will can be raised only by *direct and positive* evidence as to the act of a third party." (Emphasis ours.)

[5] The vice of these instructions is in the use of the words "direct" and "positive" as designating the character of proof which the proponents were required to make. Its prejudice to the proponents relates particularly to the issue of the intention of the testatrix to revoke the will, assuming that she alone had altered it. The effect of the instruction was to advise the jury that unless it found direct and positive evidence that some third party had mutilated the will it must find that the testatrix did so with the intention of revoking it. Putting it in another way, the jury was instructed that it must find for the contestant unless it found direct and positive evidence that the mutilation "was not done by the testator or was not done with such intention."

Direct evidence is defined as "that which proves the fact in dispute, directly, without an inference or presumption, and which in itself, if true, conclusively establishes that

fact." (Sec. 1831, Code Civ. Proc.) Positive evidence is the direct proof of a fact and like direct evidence is unaided by presumptions or inferences. Both the terms "direct" and "positive" are distinguished from indirect or circumstantial evidence, which is defined as that evidence "which tends to establish the fact in dispute by proving another" (sec. 1832, Code Civ. Proc.), and includes both presumptions and inferences. (Sec. 1957, Code Civ. Proc.)

[6] The proponents proved that within one month of the testatrix's death she declared that she had a will in which she left some of her property to the proponents and that she had executed no other will than the one offered for probate. Thus the presumption found in subdivision 32 of section 1963 of the Code of Civil Procedure that a thing once proved to exist continues would arise to rebut the presumption of revocation. (*Estate of Sweetman,* 185 Cal. 27, 33 [195 Pac. 918].) [7] Proponents proved that no essential part of the will had been eliminated, but that after the clause appointing executrices had been clipped out the testatrix's signature, attestation clause, and witnesses' signatures had been carefully preserved. They proved that the will had not been in the exclusive custody of the testatrix, that it had not been found among her papers or in the usual depository for her papers, but that it was found long after her death in a closet belonging to and used by the contestant. Undoubtedly the proponents were entitled to have the jury consider these circumstances as tending to rebut the presumption of intentional revocation by the testatrix.

Proponents also assign as error the refusal of the trial court to give to the jury the instruction they proposed relating to the effect of the declarations of the deceased regarding the existence of a will. [8] While the proposed instruction cannot be commended in its entirety, the proponents were undoubtedly entitled to an instruction relating to the use of indirect evidence in view of what had already been given relating to the presumptions in favor of contestant. The refusal to give such an instruction was highly prejudicial to proponents' cause.

Judgment reversed.

Sturtevant, J., concurred.