[Civ. No. 4227. Fourth Dist. Jan. 2, 1951.]

Estate of IDA A. STICKNEY, Deceased. LIDA FELIOS et al., Appellants, v. LETHA PHELPS et al., Respondents.

Henry C. Gardiner for Appellants.

Robert C. Thaxton and Robert C. Thaxton, Jr., for Respondents.

MUSSELL, J.—In this probate proceeding five sheets of paper found in an envelope with other papers, in a desk in decedent's residence, were offered for probate as the holographic will of Ida A. Stickney, deceased.

A trial was had without a jury and the court found that the offered document was not the last will and testament of Ida A. Stickney; that the alleged will had been altered, torn and cancelled by the decedent with the intent and for the purpose of revoking it; that the said instrument is not, and was not, intended by the decedent to be her last will and testament.

The instrument presented as a will was denied admission to probate and this appeal followed. The sole question here presented is the sufficiency of the evidence to support the findings and judgment.

The envelope containing the purported will and other papers had been sealed and marked "to be opened in case of my death. Kirby's trust deed to be added." When found, it had been opened and the five sheets offered as a will were folded and held together with a "slip-on" paper clip. On the last sheet, folded around the others, the following notation in the

handwriting of the testatrix appears: "Use this to make will from Put Kirby trust deed in."

The papers in the envelope, other than those offered as a will, consisted of five separate sheets. One was a typewritten copy of what purported to be a will of one Ella Patterson, and the other four were in the handwriting of the decedent and appear to be partial drafts or parts of a will dated May 9, 1946. Two of these loose sheets had paragraphs so numbered that they could have been used to logically follow and fit in sequence with the first sheet of the offered document. In both of these loose sheets, provision was made for the brother and sister of the decedent. However, in one, a sister was to receive $500 and a brother and his wife $1,000, and in the other, the sister and brother were each to receive $1,000. Changes appear in each sheet of the offered document, except the first. The last sheet is signed and dated May 9, 1946. As evidenced by the renumbering of paragraphs and the shortness of the paper, two paragraphs of the second sheet, as originally written, had been eliminated by cutting off the top part. Paragraph three of the offered document, formerly paragraph five, originally referred to Mrs. Stickney's property located at 4366, 4368, 4370 Utah Street. However, a line was drawn through the numbers and the words "Utah Street" and the words and figures "2861-Howard" substituted therefor. The word "sold" was written over the reference in said paragraph to a house at 4370 Utah Street. (This property was sold on or about March 16, 1948, and the Howard Street property purchased April 1, 1948.) There is no reference to "Kirby's trust deed" in the purported will other than the notation on the back of the last sheet after the words "use this to make a will from."

Helen Carson, mentioned in the will, a close friend of the decedent, testified that the decedent, during a period of six or eight months prior to her death, stated that she had made a will before she took a trip to visit her brother (in June, 1947); that the will she had made was not the will she wanted at all and that she was making a new one and that she wanted to make a new will; that two or three weeks before her last illness, Mrs. Stickney phoned and asked to be taken in to see a lawyer and stated that she wanted to make a will.

One of Mrs. Stickney's neighbors, a Mrs. Collins, testified that sometime in 1948, Mrs. Stickney said that she was going to make a will. Mrs. Kidder, a neighbor and close friend, testified that in July of 1949, Mrs. Stickney stated "that she didn't have any will and it worried her; that she wasn't feel-

ing good and didn't have a will made out; that she should go and have one made out and that she didn't have her affairs fixed up''; that on August 18, 1949, when decedent became ill and was taken to a hospital, she said ''If anything happens to me, I don't know what is going to happen to my things, because I don't have things in order and I don't have a will and don't have it the way I want it and I asked you girls to take me and nobody ever took me.''

Mrs. Letha Phelps, sister of decedent, testified that in June, 1947, decedent stated that she did not have her affairs straightened up and had no will.

 The evidence is sufficient to support the findings and judgment. It is evident that Mrs. Stickney wrote out a will some time in 1946; that she placed it in an envelope and labeled it ''Will of Ida A. Stickney, to be opened in case of my death.'' There is evidence that the envelope and contents were in the possession and control of the decedent until her last illness. Under the circumstances shown the inference is that any changes and alterations were made by the testatrix. (*Estate of Hewitt,* 63 Cal.App. 440, 447 [218 P. 778].)

 The numerous changes and alterations in the offered document; the statements made by the testatrix that she had no will; the fact that the Kirby trust deed (of approximately $4,000) was not disposed of; the presence of the miscellaneous papers in the opened envelope and the endorsement ''use this to make a will from,'' are amply sufficient to support the finding that the offered document was not the last will and testament of Ida A. Stickney or intended by her as such. It is apparent that the testatrix executed an holographic will in 1946, and put it in an envelope which she sealed and marked ''to be opened in case of my death.'' Later she opened the envelope and made numerous attempts to execute a new will, none of which were successful.

In *Estate of Sargavak,* 35 Cal.2d 93, 95, 96 [216 P.2d 850], it was held that before an instrument may be probated as a will, it must appear from its terms, viewed in the light of the surrounding circumstances, that it was executed with testamentary intent; that the testator must have intended, by the particular instrument offered for probate, to make a revocable disposition of his property to take effect upon his death; that regardless of the language of the allegedly testamentary instrument, extrinsic evidence may be introduced to show that it was not intended by the testator to be effective as a will and that oral declarations of a testatrix before and after the

execution of the instrument in question are admissible if offered for the purpose of ascertaining the intent with which the instrument was executed.

■ In the instant case, as was said in *Estate of Trefren,* 86 Cal.App.2d 139, 142 [194 P.2d 574]:

"All conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial judge or jury. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384].)"

Where, as here, there is substantial evidence to support the trial court's findings and judgment, the appellate courts will not interfere.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 1, 1951.