[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 140 
OPINION
On this appeal by Lora T. Bott from an order denying her petition for heirship and for appointment as coexecutor of the decedent's will, the contentions are that the evidence is insufficient to support the finding that the decedent intended to partially revoke his will, and that the court erred in applying the doctrine of dependent relative revocation.
The appeal is on a settled statement. The testator, Charles Uhl, died on September 7, 1967, a resident of the County of Santa Cruz. His will, a formal witnessed document executed in 1946 in Chicago, Illinois, was found in a metal box in the closet of the bedroom in his Aptos home. The pertinent portions of the will, as originally drafted, are contained in the third paragraph, the first section of which bequeathed a total of 52 shares of the residuary estate to designated members of the testator's immediate family, while the second and third sections bequeathed a total of 48 shares *Page 141 
of the residuary estate to certain designated friends. Appellant was named in the second section of the third paragraph as a friend to receive six shares, in the sixth paragraph as the conditional legatee of certain shares bequeathed to two other friends, and in the tenth paragraph as a coexecutor with one Russell Wright.
The will, as admitted to probate, contained a number of interlineations and markings made by the testator in colored pencil, including a notation in the left-hand margin of the first page, stating "Revise whole mess." Among the changes made by the testator in the first section of the third paragraph was to cross out the figure 12 as to shares allocated to his mother and the insertion of the figure 24; in a similar manner, the 7 shares each originally left to his sisters, Pearl Demos and Eleanor Lott, and his brother Victor, were reduced to 3 each for the two women and one for Victor. In the second section of the third paragraph, a line was drawn through appellant's name and the 6 shares originally allotted her, as well as the names and number of 12 shares originally left to several other persons who are not parties to this appeal. Appellant's name was also stricken from the other two provisions of the will, and there were other markings in the tenth paragraph indicating that the person originally named as alternative executor was to serve as coexecutor.
The trial court, following Estate of Martens, 10 Cal.2d 395
[74 P.2d 238],[1] held that the cancellations mentioned above constituted a revocation of the particular provisions mentioned and admitted the will to probate, except for the items crossed out and that certain interlineations, such as the appointment of a new coexecutor, were ineffective. However, as to the changes in the shares allocated to the testator's mother, two sisters and one brother, the trial court applied the doctrine of dependent relative revocation,[2] and concluded that the cancellations of these amounts were made with conditional revocatory intent. Accordingly, the court admitted to probate the original provisions of the documents as to these four members of the testator's family. Thus, the will, as admitted to probate, completely excluded appellant as a legatee and as coexecutor. *Page 142 
Appellant's first contention on appeal is that there was insufficient evidence of the testator's intent to revoke any part of his will, as the various marks on the will were mere indications of the changes he intended to make when he wrote a new will. She further contends that the conclusion of the trial court resulted in intestacy and that the trial court could not logically find unconditional revocatory intent as to the cancellation of the provisions relating to her and conditional revocatory intent as to the four bequests to his mother, sisters and brother.
As to the testator's intentions, the record reveals the following: His sister, Pearl Demos, visited him in the summer of 1966 and at that time helped him go through and dispose of great quantities of old papers and file the remainder. Among the papers that then came to her attention was the will here in issue, which then appeared to be in the same marked-up condition as when admitted to probate, and included the reduction of shares to her, her sister Eleanor, and Victor. When she asked "Who doodled on the will?" the testator replied that he had. She also called his attention to the fact that the will was now outdated as, for example, there was a bequest in favor of her oldest child but no mention of her two younger children, who were born after 1946. The testator replied: "I have been intending to make a new will. This one will do until I get around to it." When Mrs. Demos further pointed out that a will executed in Illinois and subsequently all marked up would not be valid in California, the testator stated: "The will is still good and is good anywhere. Oh, nuts! I am going to make a new one. I will get it done. Don't worry about it." During this discussion, however, no mention was made as to why the testator had reduced the shares left to his two sisters and brother and not the shares of his oldest sister, Hannah. The changes seemed normal to Mrs. Demos, however, as the testator, who was the second oldest of the children, was closer to and more affectionate with Hannah, who was the oldest child. The testator, however, indicated to Mrs. Demos that his first concern was that their mother should be taken care of and if anything should happen to him, Hannah would see to that. In the same conversation, the testator indicated to Mrs. Demos that he was through with appellant.
Appellant was a personal friend of the testator for a period of over 45 years, as their families had been neighbors in Chicago before the testator came to California. Prior to 1967, appellant spent most of her time in Chicago. However, she communicated with the testator by telephone or mail several times a year and would see him personally on an average of twice each year. During these times, the testator occasionally talked with her about his business affairs and particularly his investments in the stock market. However, he never discussed with appellant his will or the disposition of his estate, except that occasionally, he would refer to the care of his widowed mother in the event that he predeceased her. The testator *Page 143 
had sent appellant a Christmas card in December 1966 and an Easter card in April 1967. Appellant last saw the testator in July 1967, when she visited at his home in Aptos. Appellant had no personal knowledge of any adverse feeling that he may have had toward her. As far as she was concerned, their relationship was always a warm and friendly one.
(1) To constitute a valid revocation, acts of cancellation or interlineation must be done with sufficient present intent and purpose of revocation (Prob. Code, § 74; Estate of O'Brien,246 Cal.App.2d 788 [55 Cal.Rptr. 343]). (2) Here, the evidence indicates that the testator in one conversation told Mrs. Demos that he planned to make a new will but that the old one was still good. It was the exclusive function of the trial court to resolve the conflict in the evidence as to whether the cancellations and interlineations in the will were made by the testator with the intent to revoke or merely as guides for a new will that he planned to execute.
The notation "Revise whole mess" in the margin of the first page is not, as appellant argues, a conclusive indication that the other markings on the will merely represented possible future changes. Appellant's contention assumes that this notation was made after the other alterations. There is no evidence to this effect. The fact that the notations were in different colors would merely indicate that they may have been made at different times. Furthermore, an express intent to revise the whole will is not inconsistent with present and past intentions to alter or make additional alterations. Even if this notation was made after the other alterations, it could signify nothing more than that the testator had made all the revisions he desired. The testator did not cancel his signature or completely destroy the document. This is consistent with an intention that it remain in effect as drafted, with the subsequent changes.
(3) The fact that the will was found in the possession of the testator and had been in his exclusive possession from the time of its execution in 1946 until his death in 1967 alone supports a finding of revocatory intent as to the cancellations (Estate ofWikman, 148 Cal. 642 [84 P. 212]; Estate of Olmsted, 122 Cal. 224
[54 P. 745]). In addition, as to the cancellation of the provisions relating to appellant, there was his statement to Mrs. Demos that he was through with appellant. We conclude that there was sufficient evidence to sustain the trial court's implied finding that the cancellation of the provisions in the will relating to appellant were made with the requisite intent.
Appellant next argues that the trial court's interpretation of the will as partially revoked resulted in intestacy to the extent of 18 percent[3] of the residuary estate. However, the presumption against intestacy is not necessarily controlling.(4) If a testator has used language that results in *Page 144 
intestacy and there can be no doubt in the meaning of the language that was used, the court must hold that intestacy was intended. A testator has the right to make a will that does not dispose of all of his property but leaves a residue to pass to his heirs under the laws of succession. Such a will is not the usual one but when the language that leads to the result is clear, the will must be given effect accordingly. In Estate ofBeldon, 11 Cal.2d 108 [77 P.2d 1052], the court ruled that 75 percent of the residue pass by intestacy rather than adopting a construction based upon conjecture. In the instant case, the partial revocation resulted in the intestacy of only a small portion of the estate, which would now go to the testator's mother, the expressed object of his concern.
(5) Appellant next argues that under the Estate of Martens,supra, the trial court could not logically find unconditional revocatory intent as to the provisions relating to her and the other cancelled legatees, and conditional revocatory intent as to the provisions changing the number of shares left to the testator's mother, his two sisters and one brother. Under the circumstances, we see no logical inconsistency in the court's finding a different revocatory intent as to the cancellations of bequests to his friends than in the changes of the bequests to members of his immediate family. The testator's concern for his widowed mother and her care if he predeceased her is uncontroverted. The changes in the bequests to his immediate family were designed to increase his mother's share. Also, as indicated above, there is no indication that all of the changes in the will were made at the same time or a part of a single scheme of revision. Neither logic nor the rule of the Martens case requires that all cancellations or changes be made with the identical intent.
(6) Finally, appellant argues that the trial court erroneously applied the doctrine of dependent relative revocation as to the shares left to the testator's mother, two sisters and brother. However, appellant is in no way affected by the application of the doctrine even if we had concluded that the bequest to her had not been revoked. The only legatee whose interest was diminished by application of the doctrine was the mother of the testator, who would take the greater share by intestacy if all of the cancellations had been found to be unconditional. However, she is not a party to this appeal. A party whose rights are not affected by an order is not aggrieved thereby (Estate of Cropper, 83 Cal.App.2d 105 [187 P.2d 780]). Accordingly, we need not discuss further appellant's contention that the doctrine of dependent relative revocation can only be applied where there are two testamentary documents.
The order appealed from is affirmed.
Shoemaker, P.J., and Agee, J., concurred.
[1] In Martens, the decedent, after formal execution of his will, instructed his son-in-law to draw a line with a typewriter through the portion of the will relating to the appointment of the executors, and at the same time attempted to nominate other persons as executors. The court held that although the cancellation of the provision relating to the original executors was valid as a revocation, the attempted interlineation and substitution of other persons was invalid as the substitution had not been made with the requisite testamentary formalities.
[2] Under this doctrine, it is assumed that the testator's revocation of his first disposition is inseparably related to and expressly conditioned on the validity of the second disposition (Estate of Kaufman, 25 Cal.2d 854 [155 P.2d 831]). The purpose of the doctrine is to carry out the probable intention of the testator when there is no reason to suppose that he intended to revoke his earlier will if the later will became inoperative (Estate of Cuneo, 60 Cal.2d 196 [32 Cal.Rptr. 409, 384 P.2d 1, 7 A.L.R.3d 1132]).
[3] Six percent originally bequeathed to appellant and 12 percent originally bequeathed to the other legatees, who are not parties to this appeal. *Page 145