[Civ. No. 11950. Third Dist. Nov. 20, 1969.]

Estate of CAROLINA CUNEO, Deceased.
CLARA MONDANI et al., Petitioners and Respondents, v.
ANDREW J. CUNEO, Petitioner and Appellant.

## COUNSEL

Robert A. Zarick and Thomas A. Wahl for Petitioner and Appellant.

Gard Chisholm, Horace E. Cecchettini, William S. Gregory and Wilke, Fleury, Sapunor & Hoffelt for Petitioners and Respondents.

## OPINION

**JANES, J.**—Andrew Cuneo appeals from a decree determining interests in the estate of his mother, Carolina Cuneo. Respondent Clara Mondani is Andrew's sister.[1] Appellant claims error in the exclusion of certain evidence. We sustain his contention.

---

[1] A second respondent—Julia (Giulia) Cuneo—does not oppose Andrew's appeal. Julia is one of Carolina's daughters.

In prior proceedings involving this same estate, Andrew and Clara were parties to an appeal to the Supreme Court (*Estate of Cuneo* (1963) 60 Cal.2d 196 [32 Cal.Rptr. 409, 384 P.2d 1, 7 A.L.R.3d 1132]) from a judgment in a consolidated will contest involving four testamentary writings. That superior court judgment had admitted to probate a 1956 holographic codicil written in Italian by Carolina. As written, the codicil had no punctuation whatever. No letters were capitalized in it except the "D's" and the first letters of persons' names. It was translated by language experts at the trial on the contests. The Supreme Court reversed the judgment with directions to admit a 1954 will to probate with the 1956 codicil as republished in 1957. The opinion in 60 Cal.2d, at page 199, added punctuation to the codicil (with resultant sentence capitalization) and quoted it as follows:

" 'October 15, 1956

" 'I, Carolina Cuneo, add this to my will. Upon my death my daughter, Clara, is to take my place and act in my stead as if it were I. I strongly recommend Giulia to her. She and Clara will be the owners of everything I possess. While they live no one will be able to disturb them.

" 'I sign myself Carolina Cuneo, nee Carolina Poggi.

" 'My will is in the possession of De Paoli [an attorney]. After my death Clara will be the manager because Giulia is not good at managing. She is to take my will from De Paoli and pay whatever is to be paid.

" 'I sign myself Carolina Cuneo.' " (Bracketed insert ours.)

The present controversy was generated by the Supreme Court's placement of the punctuation indicated in the above quotation—particularly by its insertion of a period after the word "possess" in the first full paragraph of the codicil. In this form, the codicil seems more likely to confer fee interests upon Clara and Julia than life estates, although the latter construction is tenable.

Almost three years after the remittitur went down, Clara petitioned for a decree determining the interests of all persons in the estate. At the hearing thereon, appellant offered to prove by an Italian language expert that the correct punctuated translation of the dispositive portions of the codicil should be as follows: "She and Clara will be the owners of everything I possess while she [*sic*] live. No one will be able to disturb them." In this form, where the period is inserted after "live" and not after "possess," the codicil would appear to confer life estates, and not fee interests, upon Clara and Julia. Appellant's offer of proof was met by an objection on the ground of "law of the case." In sustaining this objection, the trial court stated from the bench its view that if appellant could "bring in another interpreter to say

that this period [after the word "possess" in the codicil] should have been placed someplace else, that this is improper punctuation, . . . you are changing the will that the Supreme Court has already decided is the will." In its findings, after mentioning the 1954 "formal will" and the 1956 codicil, the court found "[t]hat said will is clear and unambiguous," and that "by said will and codicil the entire estate . . . is bequeathed and devised to Julia Cuneo and Clara Mondani. . . ." A corresponding decree followed and is now appealed.

On the former appeal, the unpunctuated *translation* of the codicil was necessarily used by the Supreme Court in determining that the codicil was "[m]anifestly . . . testamentary in character" and that, by providing "at least life estates, if not gifts in fee, for Clara and Julia," the codicil reasserted "a continuous, consistent testamentary plan"—matters which bore on the issue of dependent relative revocation which was then before the court. Without the unpunctuated translation, the court could not have determined (as it did) that the codicil "fails to mention four of the decedent's six issue," a pretermission which the court overcame by reviving the 1954 will as modified by the codicil. (60 Cal.2d at pp. 201-205.)

However, the Supreme Court implicitly left open the issue of punctuation and resultant sentence capitalization when it noted that "There remains unresolved at this time the question whether the dispositive provisions of the 1956 instrument conferred upon Julia and Clara life estates or full fee interests. The trial court made no findings thereon, *and properly so.* 'When there is presented for probate one or more instruments claimed to constitute a will, the only question legitimately before the court is whether or not the propounded instrument or instruments constitute a will; and in determining that question the court ordinarily has nothing to do with the *construction* of the will, resolving inconsistencies in the disposition of property or interpreting the testamentary provisions.' " (60 Cal.2d at p. 206.) (Italics ours.)

■ The judicial insertion of punctuation into an unpunctuated will is a recognized method of resolving an ambiguity, if consistent with the otherwise evident intent of the testator. (See, *Estate of Gadina* (1925) 75 Cal.App. 776 [243 P. 454]; *Gehring* v. *Henry* (Mo. 1960) 332 S.W.2d 873, 877; *Rankine* v. *Rankine* (R.I. 1928) 142 A. 143; *Treanor* v. *Treanor* (1941) 25 Tenn.App. 133 [152 S.W.2d 1038, 1042].) As an interpretive device, it has no function at the contest stage unless necessary to determine the precise issue of what document or documents constitute the last will of the deceased. ■ Nothing in the Supreme Court's opinion indicates any such necessity in regard to the 1956 codicil. That opinion makes clear that, before a will is admitted to probate, its construction is normally not part of the trial court's function. Simply because punctuation

appears in the Supreme Court's quotation of the codicil (60 Cal.2d at p. 199), we may not assume that the Supreme Court did what it said a trial court ought not to do at that stage of the proceedings. The punctuation used by the Supreme Court was obiter dictum. As such, it is neither res adjudicta (see, *Guardianship of Leach* (1947) 30 Cal.2d 297, 311 [182 P.2d 529]; *Estate of Lowe* (1918) 178 Cal. 111, 113 [172 P. 583]; 46 Am.Jur.2d, Judgments, § 420, p. 589) nor law of the case (see, *Stockton Theatres, Inc. v. Palermo* (1956) 47 Cal.2d 469, 474 [304 P.2d 7]; *Taylor v. Bunnell* (1931) 211 Cal. 601, 606 [296 P. 288]; *Estate of Burnett* (1935) 6 Cal.App.2d 116, 125 [44 P.2d 435]). Without punctuation, the translation of the codicil was ambiguous. The trial court therefore erred in excluding appellant's expert evidence of punctuation, which was relevant to a resolution of that ambiguity.

The decree determining interests is reversed.

Pierce, P. J., and Friedman, J., concurred.

The petition of respondent Mondani for a hearing by the Supreme Court was denied January 14, 1970.