No. 13298

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

IN THE MATTER OF THE ESTATE OF
OSCAR W. CRADDOCK,
                    Deceased.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

    For Appellant:

        Burgess, Joyce, Prothero, Whelan & O'Leary,
         Butte, Montana
        Robert O'Leary argued, Butte, Montana

    For Respondent:

        Edward Yelsa argued, Anaconda, Montana

---

                            Submitted:  March 16, 1977

                             Decided:  JUN - 1 1977

Filed:  JUN - 1 1977

Thomas J. Kearney
                                            Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal from an order of the district court admitting to probate a purported holographic will of Oscar W. Craddock, who died on November 22, 1969, survived by one brother and five sisters.

Oscar W. Craddock had resided on his ranch near Ramsey, Montana, located in Silver Bow County, along with his brother, Ralph Craddock and two sisters, Ruby and Myrtle Craddock. Ralph Craddock resided with his brother from 1953 until 1969, performing most of the physical labor on the ranch. Ruby and Myrtle Craddock resided with Oscar from 1960 until 1969, taking care of the household duties.

In February 1972, approximately two and one half years after Oscar W. Craddock's death, Ruby found the holographic will in question in a cupboard above the kitchen sink at the ranch house. The will was taken to the Silver Bow County attorney's office by Ralph shortly thereafter. A few days later Ralph retrieved the will and returned it to the cupboard where it remained until September, 1972.

Ruby and Myrtle Craddock were hospitalized in July or August, 1972, Ruby for illness and Myrtle for a nervous breakdown. Ruby Craddock died in September, 1972, and Myrtle Craddock was subsequently declared incompetent.

Following Ruby's death and the hospitalization in Warm Springs of Myrtle, Ralph Craddock offered the holographic will for probate in September, 1972, an enlarged copy appearing as follows: (The actual dimensions of the will are 4-1/8" x 5-5/8".)

June, 20, 1966. Mey
Charerify, dat I
Oscar W, Craddock
in sound mind,
leave to, Brother,
Ralph Craddock,
~~this~~ all of my land,
~~...~~
~~...~~
all of my land,
in Case of my Death.
Oscar, W, Craddock
Born, Jan, 14, 1889.
                Butte mont.
Adaministrator,
Ralph, and Henry
Ralph, Craddock

This will was written in pencil and the cross-outs are blue in color.

Thereafter Pearl Trevenna, another sister of Oscar W. Craddock, filed an objection to the probate of the will alleging that the will had been mutilated and materially altered by someone other than Oscar W. Craddock. The district court denied probate of the will and Ralph Craddock appealed to this Court

objecting to the procedures followed by the district court. This Court remanded the case to the district court for a hearing at which the proponent was to make a prima facie showing of proper execution in compliance with statutory requirements. Estate of Oscar W. Craddock, 166 Mont. 68, 72, 530 P.2d 483. At that time this Court stated:

> "Accordingly, we remand this case to the district court for a hearing at which proponent is to make his prima facie showing of the proper execution of the will. By so holding, we make no disposition as to the merits of the issue. The alterations appearing on the face of this holographic will, if unexplained, could invalidate the will. The determination rests with the district court upon proper hearing." (Emphasis supplied.)

The district court held this hearing wherein Ralph Craddock and his daughter, Charlene Berryman, testified in the proponent's case in chief. The contestant, who is now George Trevenna, the personal representative of the estate of Pearl Trevenna, deceased, presented no case in chief. Thereafter, the district court entered an order admitting this will to probate and the contestant appealed. The district court, however, failed to make findings of fact and conclusions of law, stating its basis for the order. Now we are asked to address the merits of this case.

Rule 52(a), M.R.Civ.P., makes it mandatory that the district court make findings of fact and conclusions of law in all actions tried upon the facts without a jury. Absent findings of fact and conclusions of law, this Court is forced to speculate as to the reasons for the district court's decision. Such a situation is not a healthy basis for appellate review. For this reason we reverse the district court's order and again remand this case to the district court with instructions to make findings of fact and conclusions of law, based upon the hearing previously held before the district court, and enter an order accordingly.

For purposes of possibly expediting the disposition of

- 4 -

this matter, we will address one principle of law relied upon by the proponent at the district court and before this Court.

The proponent asserts that he is entitled to a presumption that the testator made any alterations or modifications found to appear upon the holographic will. The proponent cites two California cases as authority for this principle, Estate of Stickney, 101 C.A.2d 572, 225 P.2d 649, and Estate of Cuneo, 60 C.2d 196, 384 P.2d 1. However, a better understanding of this rule of law is found in Estate of Hewitt, 63 C.A. 440, 218 P. 778, in which California first discussed this principle.

Hewitt involved a will found in an open closet four to five weeks after the testatrix's death with the signatures cut away. The district court instructed the jury that where a will remains in the testator's possession until his death, and is then found among his papers with alterations, cancellations or tearings, the presumption is that such alterations, cancellations, or tearings were done by the testator with the intention to revoke. This instruction was first of all held to be in error for the use of the word "presumption" instead of "inference". Secondly, the court pointed out that the will was found four to five weeks after the testatrix's death in an open hall closet; that the testatrix's son, the contestant, also had a key to a safety deposit box, in which the will had been previously kept; that the contestant had access to some of the testatrix's papers shortly before her death and had secretly destroyed them. The court then held:

> "On the facts, therefore, the case is not similar to those upon which the rule of law, however correct it may be, has been laid down, that, when a will is found immediately upon the death of the testator among his private papers, or in his depository, and in a mutilated condition, having been continuously in the testator's possession until his death, the presumption is that it was mutilated by the testator himself

- 5 -

animo revocandi. It is hardly necessary to point out the error in the use of the word "presumption". (Emphasis supplied.)

As recently stated in In re Estate of Hartman, ____Mont. ____, ____P.2d____, 34 St.Rep. 285 (1977):

"Legal presumptions are founded upon the experience and observation of distinguished jurists as to what is usually found to be the fact resulting from any given circumstances; and, the result being thus ascertained, whenever such circumstances occur, they are prima facie evidence of the fact presumed."

It is not a logical inference from the facts of the present case that the testator made the cross-outs in question. This holographic will, which leaves the entire estate to the proponent, was found two and one half years after the testator's death. The proponent then retained possession of the will for seven months and presented it for probate following the death of one sister and the mental hospitalization of the other sister, both of whom had resided with the testator and performed his household duties. Under such circumstances, this proponent is not entitled to the evidentiary benefit of a presumption, if any does exist, that the testator authored the cross-outs in question.

This cause is reversed and remanded to the district court with instructions to enter an order in accordance with this decision.

_____
                  Chief Justice

We concur:

_____

_____

_____

_____
        Justices

- 6 -