587 P.2d 271

**In the Matter of the ESTATE of Harry J. BLAKE, Deceased, William Kozla, Gladys Kozla, Judith Sterbenz and Marilyn Tucker Hams, Appellants,**

v.

**LaVergne BENZA, Appellee.**

**No. 1 CA–CIV 3908.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 21, 1978.

Robinson, Karasek, Allen & Davis by David J. Karasek, Douglas E. Davis, Phoenix, for appellants.

Ivan Robinette, Phoenix, for appellee.

## OPINION

WREN, Judge.

The primary issue raised in this appeal is whether the trial court erred in admitting

into probate a letter as a holographic will. We find no error in the admission and, therefore, affirm the trial court.

The decedent, Harry J. Blake, was raised in Chicago by an aunt and married one of the aunt's daughters, Edna. Edna's sister, Gladys Kozla, her husband William, and their daughters, Judith Ann Sterbenz and Marilyn Tucker Hams (decedent's nieces), are the appellants (contestants) in this action. The daughter of Blake's deceased brother, LaVergne Benza (Benza), also a niece of decedent, is the appellee.

On February 2, 1961, the decedent executed a formal will essentially leaving his entire estate to his wife. In the event of her prior death, the estate was to be divided among six people, including two of decedent's nieces, Sterbenz and Hams. On December 4, 1973, shortly after his wife's death, the decedent executed a formal codicil to his will, adding Gladys and William Kozla to the list of beneficiaries.

During the summer of 1974 the decedent visited Chicago, staying a few days with the Kozlas and almost a month with Benza. Following his return to Phoenix, he sent many letters to Benza expressing his appreciation for her hospitality. The postscript to one of these letters, dated October 9, 1974, is the basis for this litigation. It states:

"P.S. You can have my entire estate. s/Harry J. Blake (SAVE THIS)"

In March 1976, due to an illness, the decedent was taken to a convalescent home. While there he instructed a friend, James B. Cooper, to go to decedent's home, take some papers from his desk, and deliver them to his lawyer. Among these papers was the codicil to his will. The decedent died on March 17, 1976.

On April 30, 1976, Benza filed a probate petition, offering the letter of October 9, 1974 as a holographic will. On May 3, 1976, Cooper filed a petition for informal probate of the December 4, 1973 codicil. He later filed an amended petition for formal probate. Benza and Cooper both filed objections to the other's proposed probates and Cooper was appointed special administrator

and personal representative of the estate. The contestants also filed objections.

On December 6, 1976, a trial was held, after which the court found in favor of Benza and admitted the holographic instrument to probate. The contestants filed a motion for new trial which was denied. Contestants now appeal that decision, claiming that the trial court erred in admitting the holographic instrument to probate. All other issues were waived by counsel at oral argument.

■ A.R.S. § 14–2503 provides that a will is valid as a holographic will, regardless of whether it is witnessed, if the signature and material provisions are in the handwriting of the testator. It is also well established that a holographic instrument, to serve as a will, must demonstrate that the testator had testamentary intent. *In re Harris' Estate*, 38 Ariz. 1, 296 P. 267 (1931). Testamentary intent requires that the writing, together with such extrinsic evidence as may be admissible, establish that the decedent intended such writing to dispose of his property upon his death.

■ In the present case there has been no contention that the letter was not written and signed by the decedent. What the contestants do urge as lacking is the requisite testamentary intent. The burden of proving such an absence is on the contestants. A.R.S. § 14–3407. Although each case must rest on its own facts, *In re Estate of Miller*, 54 Ariz. 58, 92 P.2d 335 (1939), this Court will view the evidence in the light most favorable to sustaining the decision of the trial court. *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 440 P.2d 105 (1968); *Muccilli v. Huff's Boys' Store, Inc.*, 12 Ariz.App. 584, 473 P.2d 786 (1970). Here, the trial court ruled that the letter written by the decedent constitutes a valid holographic will and thus evidences the requisite testamentary intent. The crux of this appeal, therefore, is whether the trial court erred in ruling that the letter, together with the surrounding circumstances, demonstrates an intent on the part of the decedent to create a will.

The contestants argue that the letter, on its face, shows a lack of testamentary intent. They claim the postscript to the October 9 letter is merely a casual statement, not sufficiently definite to constitute a will, and cite in support of their position, *In re Golder's Estate*, 31 Cal.2d 848, 193 P.2d 465 (1948); *Craig v. McVey*, 200 Okl. 434, 195 P.2d 753 (1948); and *In re Estate of Kenyon*, 42 Cal.App.2d 423, 109 P.2d 38 (1941).

We disagree with the contention that the letter, on its face, demonstrates a lack of testamentary intent. Unlike the letter in the cases cited by the contestants, the one in this case is definite in its terms that Benza is to have the decedent's estate. It does not merely suggest that the decedent would, in the future, make arrangements to will his property to his niece. The form in which the clause was written is also strong indicia of a will. The use of the word "estate" infers that the decedent was making a disposition of his property to take effect upon his death. The letter also instructs Benza to "SAVE THIS" which supports the position that the letter itself was to have future significance. Finally, the signature following the dispositive clause indicates that the writing was to be treated formally. In the many letters which the decedent wrote to Benza following his visit to her home in Chicago, he signed his name as "your Uncle Harry" or words to that effect. In fact, that is how he signed the letter of October 9. Then, after the postscript in which he disposed of his estate, he again signed his name but this time formally. This second signature follows the dispositive clause which appears in the postscript rather than the body of the letter. Such a placement indicates that the postscript was to be treated separately and was to be given formal consideration. In our opinion, the above-mentioned factors indicate that the letter, on its face, evidences a present intent to create a will.

The contestants next allege that the extrinsic evidence presented at trial proved a lack of testamentary intent. In this regard they present three arguments. As their first argument the contestants claim that the formally executed will and codicil which were drawn by an attorney were never revoked. They argue that if the decedent intended to change the testamentary disposition of his property, he would have formally executed another will.

■ We do not agree with this contention. A subsequent inconsistent will revokes a previous will, A.R.S. § 14–2507. A holographic instrument is sufficient to revoke a formally executed will. *In re Estate of Morris*, 15 Ariz.App. 378, 488 P.2d 1015 (1971). The contestants argue, however, that to revoke a formally executed will, a subsequent holographic will must be phrased so that there can be no doubt that the decedent intended to make further testamentary provisions. *In re Beebee's Estate*, 118 Cal.App.2d 851, 258 P.2d 1101 (1953). As previously mentioned, we believe the dispositive clause is clear. Since the decedent stated that he wanted his entire estate to go to Benza, a trier of fact could conclude that there was intent to revoke the previous will and codicil.

The contestants' second argument concerning extrinsic evidence is that since the decedent had plenty of time to change his formal, witnessed will and codicil but did not do so, he did not intend those documents to be altered. As previously indicated, however, a holographic will is a proper method for disposing of one's property and revoking a previous will. The decedent had no duty to execute a new formal will to change the testamentary disposition of his property.

Finally, the contestants argue that the decedent did not treat the letter as his will. They note that just before he died, Blake asked a friend to take his personal papers to his attorney. Among those papers was the codicil to the will. When this was done the decedent stated: "Everything's fixed up." Additionally, a friend of Blake's testified that after the death of his wife, the decedent told him that he had not made another will. However, there was not evidence as to when such a statement was made, that is, whether it was before or after the October 9, 1974 letter.

We do not believe the fact that a codicil is among a decedent's valuable papers necessarily requires a finding that a document subsequently made was not intended to be a will. The existence of a codicil certainly does not preclude a more recent instrument from being admitted to probate.

Viewing the extrinsic evidence in the light most favorable to sustaining the judgment of the trial court, we find ample support for the finding that decedent intended the postscript of the October 9 letter to be his last will. Benza introduced into evidence several letters written to her by the decedent which clearly showed his affection for her. There was also testimony from a close friend of the decedent that he had told her he was leaving everything to Benza.

Under the circumstances presented, we hold that it was not erroneous for the trial court to determine that the decedent intended the October 9 letter to be his will. The letter complies with the statutory requirements of a holographic will. We, therefore, affirm the decision of the trial court.

JACOBSON, P. J., and DONOFRIO, J., concur.