105 Cal.App.3d 796 (1980)
165 Cal. Rptr. 319
Estate of LLOYD M. NIELSON, Deceased.
ARTHUR G. NIELSON, Contestant and Appellant,
v.
SAN DIEGO BRAILLE CLUB et al., Claimants and Respondents.
Docket No. 18762.
Court of Appeals of California, Fourth District, Division One.
May 15, 1980.
*799 COUNSEL
Joseph J. Fisch, Clayton M. Anderson, Fisch & Spiegler and Karen M. Ladner for Contestant and Appellant.
Sickles, Chialtas & Mudd, William D. Mudd, Stickney, Ortlieb, Moats & Byrne, William S. Cannon, Meserve, Mumper & Hughes, Downey A. Grosenbaugh, Hillyer & Irwin, Jack G. Charney and John R. Sorbo for Claimants and Respondents.
OPINION
STANIFORTH, Acting P.J.
Arthur G. Nielson (contestant) opposed the admission to probate of the will of his deceased nephew, Lloyd M. Nielson (testator). At the close of contestant's evidence, the trial court granted the proponent's motion for judgment made pursuant to Code of Civil Procedure section 631.8, denied the contest and admitted the will to probate. The court found contestant had failed to meet his burden of proof to overcome the presumption of validity of the will. The court concluded there was no evidence to show that the testator had made the strikeover, interlineations appearing on the face of his 1969 will.[1]
Contestant appeals asserting his evidence had established the absence of any valid will and therefore testator's estate was required to pass by rules of intestate succession to the nearest heirs-at-law.

FACTS
Testator executed a typewritten witnessed will dated February 25, 1969 (1969 will) disposing of the bulk of his estate to his mother. If the mother predeceased him, it would go to the Salvation Army of San Diego, the Braille Club of San Diego, the San Diego County Association for Retarded Children, and the National Anti-Vivisection Society *800 (Chicago, Ill.) Paragraph sixth of the 1969 will indicated the testator intentionally omitted provision for any of his heirs.
This will was validly executed; however, on its face numerous lines have been drawn through the dispositive provisions to the above enumerated charities. Interlineated in their place were the handwritten words "Bulk of Estate  1. Shrine Hospital for Crippled Children  Los Angeles. $10,000  2.  Society for Prevention of Cruelty to Animals (nearest chapter)." Appearing at the margin of these cancellations and interlineations were the testator's initials. Additionally, the date of the 1969 will was cancelled followed by the date "November 29, 1974." At both the top and bottom of this typewritten will were the handwritten words "Revised by Lloyd M. Nielson November 29, 1974."
Contestant asserts these deletions and interlineations (1) revoke the 1969 will and (2) were ineffective as a holographic will or codicil for failure to comply with Probate Code section 53.
Upon trial contestant testified he was the testator's closest living heir. He offered no testimonial evidence as to the authorship, the intent with which the deletions, interlineations were made on the will. The trial court found "[t]here was no evidence admitted concerning the handwriting of the interlineations which appear on the decedent's will of February 25, 1969 except for signature of the decedent and the signatures of the subscribing witnesses and their addresses." Accordingly, the trial court found "[t]hat the handwriting and interlineations... are of no force and effect except for signature of the testator...."

DISCUSSION

I
(1) Once the proponent of a will proves a prima facie case of due execution, the contestant has the burden of proving by competent evidence the issues raised by his contest. (Estate of Relph (1923) 192 Cal. 451, 459 [221 P. 361]; Estate of Darilek (1957) 151 Cal. App.2d 322, 325 [311 P.2d 615].)
(2) Direct evidence, however, is not essential to prove the destruction, cancellation, alterations in a will were made by the testator. A presumption of cancellation can arise from circumstantial evidence *801 alone. (Estate of Streeton (1920) 183 Cal. 284, 290 [191 P. 16]; Estate of Olmsted (1898) 122 Cal. 224, 230 [54 P. 745].)
For example, where the will is in the possession or under the control of a decedent until his last illness, the inference is the changes and alterations were made by the testator. (Estate of Stickney (1951) 101 Cal. App.2d 572, 575 [225 P.2d 649]; Estate of Hewitt (1923) 63 Cal. App. 440, 447 [218 P. 778].)
Furthermore, the handwriting on the will may speak for itself. Where the issue is the questioned authorship of a will, the trier of fact can determine the issue by comparison of the questioned writing with "genuine" or admitted handwriting of the testator without the aid of the oral testimony of any witness. (Evid. Code, § 1417; Estate of Johnson (1927) 200 Cal. 299, 304 [252 P. 1049]; Castor v. Bernstein (1906) 2 Cal. App. 703, 706 [84 P. 244].) Thus, no handwriting expert or testimony was necessary. The court  the trier of fact  had the testator's admitted handwriting before it in the proffered will. It was authorized by law to determine the authenticity of the "questioned handwriting by comparison" with the conceded handwriting of the testator.
Since the trial court erroneously concluded there was "no evidence" presented as to authorship of the deletions/interlineations on the face of the will, we must reverse and remand for further proceedings consistent with this opinion. (Cf., Heap v. General Motors Corp. (1977) 66 Cal. App.3d 824 [136 Cal. Rptr. 304].) For guidance of the trial court upon any retrial of this cause, we resolve these further contentions of error.

II
Upon the assumed premise the trial court will find the deletions and interlineations to be in the testator's handwriting,[2] contestant argues that a holographic will or codicil did not result from the testator's writings on the face of his formal witnessed will. Section 53 of the Probate Code provides: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."
*802 (3) If the handwriting on the face of the formal will is "entirely [italics added] written, dated and signed by the hand of the testator," then the statutory requisites of section 53 are met. Contestant argues the handwriting was united with, integrated, incorporated into the typewritten portions of the 1969 will, therefore no valid holograph resulted. The resolution of this contention requires an examination of several well-established rules relating to wills and particularly holographic wills or codicils.
First, there is no requirement that a holograph be written on a separate paper or denominated by the testator as a will or codicil. (Estate of Spitzer (1925) 196 Cal. 301, 307 [237 P. 739]; Estate of French (1964) 225 Cal. App.2d 9, 15 [36 Cal. Rptr. 908].)
Second, the mere presence of typewritten words on the paper upon which a holographic will or codicil is written, of which such words are no part, does not render the holograph invalid. (Prob. Code, § 53.) "[A]s declared in Estate of Bower ... `the mere presence of printed matter on the paper is not fatal to the validity of an holographic will written thereon if such printed matter be not included or incorporated, directly or indirectly, in the will as written by the hand of the decedent.'" (Estate of Baker (1963) 59 Cal.2d 680, 683 [31 Cal. Rptr. 33, 381 P.2d 913]; see also Estate of Helmar (1973) 33 Cal. App.3d 109 [109 Cal. Rptr. 6].)
The Supreme Court in Estate of Baker, supra, tells us the test is not whether the handwritten portion of the document independently evidences the decedent's intent as to the disposition of his property and to matters essential to the validity of the will but whether the handwritten portion evidences an intent to include any printed or typed matter which, when read with the handwritten words, is relevant to the decedent's will.
The Baker court further indicated that unless the printed or typed matter is relevant to the "substance" of the decedent's will, it can be disregarded as surplusage. (Estate of Baker, supra, 59 Cal.2d 680, 683.) In Baker, supra, the place of execution of the will (Modesto, California) was not relevant to the decedent's testamentary intent or to the validity of the will, therefore, the printed words were held not to be incorporated into the handwritten portions of the will. (Id., at pp. 683-684; Estate of Christian (1976) 60 Cal. App.3d 975, 981 [131 Cal. Rptr. 841].)
*803 A second set of relevant rules pertains to the reverse process, the incorporation by reference of extrinsic documents into an otherwise valid witnessed or holographic will.
In Estate of Smith (1948) 31 Cal.2d 563 [191 P.2d 413], the decedent had written a holographic revocatory clause across the face of a copy of an attested will (the original of which had been left with the decedent's attorney). The Supreme Court held the decedent had incorporated the attested will in the holographic clause, and said (p. 567): "It has long been settled in this state that either a holographic or an attested testamentary instrument may refer to and incorporate another testamentary instrument executed with different statutory formalities or an informal or unattested document, so long as the reference is unmistakable or with the aid of extrinsic proof can be made so." (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 143, p. 5660.) "The papers incorporated by reference are used to construe and apply the will, and do not become part of the will in the same sense as those integrated. Hence the holographic will may be regarded as entirely in the testator's handwriting, as required by the statute." (7 Witkin, supra, p. 5661; Estate of Smith, supra, 31 Cal.2d 563, 567-568; see also Estate of Atkinson (1930) 110 Cal. App. 499, 502 [294 p. 425].)
(4) The requisites of incorporation by reference are (1) the extrinsic paper must be in existence at the time the will makes reference to it; (2) the will must identify the paper by a sufficiently certain description, and extrinsic evidence is admissible as an aid to such identification; and (3) it must appear that the testator intended to incorporate the paper for the purpose of carrying out his testamentary desires. (Estate of Foxworth (1966) 240 Cal. App.2d 784, 788, 789 [50 Cal. Rptr. 237].)
(5) Finally, a prior will is revoked by a subsequent will which contains an "express revocation or provisions wholly inconsistent" with its terms. (Prob. Code, § 72.) The revoking instrument must be executed with the same formalities required for the execution of a will. (Prob. Code, § 74.) Thus a formal will may be revoked by a valid holographic will or codicil.
Applying these statutes and judicial declarations to the document under scrutiny we conclude the following: First, if the handwriting on the face of the formal will were written, dated and signed by the testator, *804 then it meets the statutory requisites of a holographic will (Prob. Code, § 53) unless "other written matter" was expressly or impliedly, directly or indirectly, incorporated into and relevant to the handwritten words. The word "incorporate" as used in section 53 means "formed or combined into one body or unit; intimately united, joined, or blended" (Webster's New World Dict. of the English Language (1966) p. 738) or "to unite with or introduce into something already existent" (Webster's Third New Internat. Dict. (1961) p. 1145.)
An examination of the document, in its entirety, leads to these conclusions: the typewritten words are not relevant to the substance of the holograph or essential to its validity as a will or codicil. Nor do the written or express words or physical ordering of relationships indicate any intention that the holograph unite, form or blend with the provisions of the typewritten will. Nor does the word-content of the holograph indicate any intent to integrate the handwriting with the typewritten will. We conclude no evidence from the face of this document tells us the author intended to "incorporate" directly or indirectly the typewritten will into the provisions which are in his handwriting so as to render the handwriting ineffective as a will or codicil and thereby defeat the author's declared testamentary intent.
(6) We further conclude that the handwriting when viewed as a whole authorizes an inference of an intent to incorporate by reference those portions of the typewritten will not modified or revoked by the holographic codicil and to give validity to, republish the typewritten will as modified by the holograph. The words used by the writer reasonably compel this conclusion.
Estate of Atkinson, supra (110 Cal. App. 499) bears a striking factual resemblance to the case at bench and is sound authority supporting these conclusions. In Atkinson, the decedent had executed a formal written will. Thereafter, "On July 9, 1913, the decedent drew ink lines through the words of the second and third clauses of [that] will and wrote, in red ink, across the typewritten lines thereof the following:
"`July 9 1913
"`I cut out this part of will
"`T.G. Atkinson'
*805 "At the same time and in the same manner he wrote across the lines of the sixth paragraph, but without drawing any lines through the words thereof, the following:
"`July 9th 1913
"`John Atkinson children are to get John share in this will
"`T.G. Atkinson.'
"Appellants admit that the second and third clauses were effectively canceled and the only contentions made by them relate to the writing over the sixth clause." (Id., at p. 501.) The court stated (p. 502): "The mere presence of typewritten words upon the paper upon which the codicil is written does not render the olographic codicil, of which such words form no part, invalid. [Citations.]
"Appellants contend that by the olographic codicil the testator `sought to make a new will by making certain changes on the face of the old will and retaining the remaining provisions thereof that were not scratched out or written over. The altered document, as thus changed was intended to be his revised original will'. It is of no materiality that the codicil is written upon one of the sheets of the original will, except that the document referred to in the codicil is thereby more clearly identified. `It has long been settled that a will or codicil executed in accordance with the requirements of statute may, by an appropriate reference, incorporate within itself a document or paper not so executed.' [Citation.] The codicil considered in the case cited was olographic. It certainly is no objection that a document so incorporated has been formally executed as a will. `The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil.' [Citation.] In the case of In re Soher, ... it is said: `The argument is, that the olographic codicil cannot be understood without reference to the attested will; that the latter is in contemplation of law "a part" of the former, and that therefore it does not come within the definition of an olographic will, which is a will `entirely written, dated and signed by the hand of the testator himself'.... The only difference between an olographic and an attested will is in the form of execution .... One form is the precise equivalent of the other.... Whatever may be done in or by the one may be done in or by the other.'"
*806 Thus, the Atkinson court relied upon two well-established principles of the law of wills to reach the conclusion that the interlineations, written, signed, dated by the testator, constitute a holographic codicil and the doctrine of incorporation by reference gave validity to republish the will as modified by the holographic codicil. (Estate of Atkinson, supra, 110 Cal. App. 499, 502.)
Those principles relied upon by the Atkinson court have been approved by the Supreme Court (Estate of Baker, supra, 59 Cal.2d 680, 683; Estate of Smith, supra, 31 Cal.2d 563, 567) and there is no reason to doubt their present viability. These rules as applied in Atkinson and here do not erode the legislative mandate of section 53. Rather such construction is in accord with the current policy of law with respect to construction of wills. (7) As stated in Estate of Baker, supra, 59 Cal.2d 680, 683: "The policy of the law is toward `a construction favoring validity, in determining whether a will has been executed in conformity with statutory requirements.' [Citations.] Further, `the tendency of both the courts and the Legislature has been toward greater liberality in accepting of a writing as an holographic will [citation]....'"

III
Nor are the cases of Estate of Baker, supra, Estate of Christian, supra, and Estate of Helmar, supra, in conflict with the Atkinson rule. Estate of Christian, supra, 60 Cal. App.3d 975, involved the use of the printed form will and the filling in of the blanks by the testator. Thus, there was a physical incorporation or tying together of the printed and handwritten portions.
Christian, supra, makes this most significant analysis of Baker, supra: "In reversing, the Supreme Court noted the tendency of both the courts and the Legislature toward greater liberality in accepting a writing as a holographic will and reaffirmed the rule that the mere presence of printed matter on paper is not fatal if such matter is not included or incorporated directly or indirectly in the will as written by the hand of the decedent. [Citation.] It then declared that the printed words, `Modesto, California,' had not been incorporated into the handwritten portion because the two words were `... not relevant to [the will's] substance or essential to its validity as a will ...' that decedent did not refer to or adopt [the words] as part of the "provisions which are in the handwriting of the decedent" [citation];...." [Citation.][1]
*807 "Baker also held that the fact that the decedent had crossed out the printed language at the top of the page but had not crossed out `Modesto, California,' before writing the date `[did] not provide a reference in the will to the latter two words or warrant the conclusion that he intended to or did incorporate in the handwritten provisions, such two words which were immaterial to [the] validity of the document as a holographic will.' The court held this to be true even though it could be inferred by reason of an earlier will that the decedent mistakenly may have believed that designation of locality was necessary in a testamentary document. [Citation.]
"Appellant would have us glean from Baker a rule that any printed matter on the document not relevant to the testamentary disposition of the decedent's property or to the validity of the document as a will is to be treated as surplusage even though the printed matter is impliedly incorporated into or referred to in the handwritten portion of the will." The court's footnote 1 provides: "Baker expressly overruled any contrary statements or implications in the Estate of Bower, ... What the Baker court apparently had reference to in Bower was the statement that in determining the validity of the document the court must consider all parts thereof `whether or not indispensable thereto' [citation] and the following language: `True, such introductory written and printed matters are not essential to a testamentary document. But, the fact remains that decedent herein concluded that they were indispensable to and should be a part of his will and he manifestly made them a part of his will.... As stated above, we are to read the decedent's will as he wrote it and not as we would write it in order to cause it to comply with established legal principles.' [Citation.] (Italics in original.)" (Estate of Christian, supra, 60 Cal. App.3d 975, 980.)
Without question the Supreme Court in Baker overruled the Bower (Estate of Bower (1938) 11 Cal.2d 180 [78 P.2d 1012]) language which would have required the court in measuring compliance of the writing with Probate Code section 53 to "consider all parts thereof `whether or not indispensable thereto.'" Here the printed portions of the formal will are not physically connected or merged into the holograph nor are they indispensable to the question of its validity. Thus, Christian, supra, is not only distinguishable factually but in its reasoning and citation of authority (Baker's reversal of Bower) supported the Atkinson reasoning and result.
*808 In Helmar, supra, there was a typewritten introduction to the handwritten will reciting inter alia not only the testamentary intent but the date of the writing. Thus, the typewritten portion was not only essential but was "physically incorporated," "tied to" the provisions of the handwritten portions by the decedent. (Estate of Helmar, supra, 33 Cal. App.3d 109, 113.)
Our discussion concerning the cogency, applicability of the rules of law expressed in the Estate of Atkinson, supra, does not preclude  dependent upon the nature of the findings of fact yet to be made as to authorship and intent with which the deletions, interlineations were made  an application of yet other rules of law, including the doctrine of dependent relative revocation. (See Estate of Kaufman (1945) 25 Cal.2d 854, 858-859 [155 P.2d 831]; Estate of Cuneo (1963) 60 Cal.2d 196, 202-203 [32 Cal. Rptr. 409, 384 P.2d 1, A.L.R.3d 1132].)
Finally, we find no error in the trial court's refusal to consider evidence of a settlement among the six charities  proponents  as a basis for granting the Code of Civil Procedure section 631.8 motion. This potential settlement had absolutely no relevance to the validity of the testator's will. This appeal offers no basis for imposition of sanctions.
Judgment reversed and cause remanded for proceedings conformable to this opinion.
Henderson, J.,[*] concurred.
WIENER, J.
I concur.
I agree the judgment must be reversed.
The writing by the decedent constitutes a valid holographic codicil under the authority of Estate of Plumel (1907) 151 Cal. 77 [90 P. 192] and its progeny including Estate of Atkinson (1930) 110 Cal. App. 499 [294 P. 425]. I am unable, however, to reconcile Plumel and Atkinson with Estate of Baker (1963) 59 Cal.2d 680 [31 Cal. Rptr. 33, 381 P.2d 913], Estate of Christian (1976) 60 Cal. App.3d 975 [131 Cal. Rptr. 841], and Estate of Helmar (1973) 33 Cal. App.3d 109 [109 Cal. Rptr. 6]. If the rationale of the latter three cases were to be followed here, the interlineations would have the effect of integrating relevant printed *809 matter from the decedent's 1969 will to revise the entire document in accordance with the decedent's later wishes. This result would be contrary to the "unambiguous expression of legislative intent" embodied in Probate Code section 53. (Estate of Helmar, supra, 33 Cal. App.3d 109, 114.) Different holdings in this area of the law should not turn on the alleged semantic differences between the phrases "incorporation by reference" or "integration." I doubt whether our holding erodes Probate Code section 53 "under the guise of liberal judicial interpretation" of that section. (Id., at p. 114.) In any event, it would be nice if our Supreme Court could clarify what I view as a confusing and conflicting body of law.
*810 
*811 
*812 
NOTES
[1] A photocopy of this will is attached as appendix 1.
[2] Our own comparison of the "questioned" with the "admitted" writing of testator lends support to this assumption.
[*] Assigned by the Chairperson of the Judicial Council.