751 P.2d 986

**In the Matter of the ESTATE OF Edward Frank MUDER, Deceased.**

**Linda LIND and Janet Hiscoe, Petitioners–Appellants,**

v.

**Retha MUDER, Respondent–Appellee.**

**No. 1 CA–CIV 9256.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 31, 1987.

Review Granted April 19, 1988.

Frost & Porter, P.C. by G. Terris Porter, Show Low, for petitioners-appellants.

Hessinger & Bowers by Joseph Julius Hessinger, Pinetop, for respondent-appellee.

OPINION

BROOKS, Presiding Judge.

This is an appeal from an order admitting a document to probate which purports to be the Last Will and Testament of Edward Frank Muder. The instrument in question is a printed form with certain handwritten insertions. We reverse.

Edward Muder died on March 15, 1984. Subsequently, Retha F. Muder, his surviving spouse, submitted an application for the informal probate of decedent's last will dated January 26, 1984. The will was later admitted to informal probate and appellants, daughters from decedent's prior marriage, filed a Petition to Adjudicate Intestacy. Following a hearing, the trial court found the will to be valid and admitted it to formal probate. This appeal followed.

Although inartfully presented, there are two issues on appeal:

1. Is the relevant document a validly executed will pursuant to A.R.S. § 14–2502?

2. Alternatively, is the document a valid holographic will executed pursuant to A.R.S. § 14–2503?

The daughters contend in this appeal that their father died intestate. They argue that the document at issue fails to meet the requirements of due execution in various respects and that the surviving spouse failed to carry her burden of proving due execution.

The surviving spouse contends that the document is at least valid as a holographic will.[1]

### I.

■ Arizona Revised Statute § 14–3407 provides in relevant part:

In contested cases ... [p]roponents of a will have the burden of establishing prima facie proof of due execution in all cases....

Proof of due execution requires a written document, signed by the testator, and also signed by two or more persons, each of whom must witness the testator's signature or the testator's acknowledgement of that signature. A.R.S. § 14–2502.

Although the surviving spouse testified that the disputed document was handwritten and signed by her late husband, she failed to establish the witness requirement of A.R.S. § 14–2502. There is no evidence

in the record, and apparently none was offered, that the witnesses who signed the document witnessed either decedent's signature or his acknowledgment thereof.

In addition, the purported will does not meet Arizona's statutory requirements for a "self-proved" will. The self-proving affidavit fails to conform to the statutory formality in that it does not state that the testator signed or acknowledged his signature, or the will, in the presence of the witnesses. *See* A.R.S. § 14–2504; *In re Estate of Mackaben*, 126 Ariz. 599, 617 P.2d 765 (App.1980). We thus turn to the issue of whether the document is a valid holographic will.

### II.

■ Arizona Revised Statute § 14–2503 provides:

A will which does not comply with § 14–2502 is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator.

The daughters cite *In re Estate of Johnson*, 129 Ariz. 307, 630 P.2d 1039 (App. 1981), as support for their contention that the document lacks testamentary intent. When both the printed and the handwritten parts are considered, both the document at issue here and the instrument in *Johnson* reveal prima facie evidence of testamentary intent, i.e., a present intent to create a will. *See In re Estate of Blake*, 120 Ariz. 552, 587 P.2d 271 (App.1978). However, when the printed portion is excluded, the remaining handwritten portion reveals neither a testamentary nor a donative intent, both of which are necessary to qualify as a valid holographic will.

Excluding the printed language, the relevant handwritten provision states:

My wife Retha F. Muder, our home and property in Shumway, Navajo County, car—pick up, travel trailer, and all other earthly possessions belonging to me, livestock, cattle, sheep, etc. Tools,

---

1. We note with disapproval the cursory manner in which the surviving spouse's three-page brief addressed the issues before us.

savings accounts, checking accounts, retirement benefits, etc.

The surviving spouse cites *Blake* as support for admitting the document as a holographic will, based on the phrase "and all other earthly possessions belonging to me." The letter postscript at issue in *Blake*, however, is clearly distinguishable from the handwritten language here. The *Blake* postscript was definite in its terms and instructed the recipient to save it for future purposes:

P.S.  You can have my entire estate. s/Harry J. Blake (SAVE THIS).

*Id.* at 553, 587 P.2d at 272. *See also, In re Johnson,* (handwritten portion of holographic will must clearly express testamentary intent.)

On this issue, we note Judge Contreras' special concurrence in *Johnson.* The basic intent of the Uniform Probate Code is to validate a will whenever possible. As in *Johnson,* the result here is contrary to that expressed purpose. The document in question, when considered *as a whole,* clearly and unequivocally evidences testamentary intent. However, as in *Johnson,* when the printed portion of the first paragraph is excised, neither testamentary nor donative intent is established and the document fails as a valid holographic will.

The order of the trial court is reversed and this matter is remanded for proceedings consistent with this opinion.

HAIRE, Chief Judge, specially concurring:

Judge Brooks correctly resolves the issues presented, and I fully concur in his discussion of the issues and disposition of this appeal. The purpose of my written concurrence is to address the concerns raised in Judge Fidel's dissent.

First, the core philosophy of the dissent appears to be that this court should, at the expense of ignoring the express provisions of Arizona's statutes governing testamentary dispositions, give effect to a document which clearly does not comply with the requirements of those statutes.

Judge Fidel justifies the result he reaches by overemphasizing A.R.S. § 14–1102(B)(2), which states that an underlying purpose of the provisions of Title 14 of our code is to discover and make effective the intent of a decedent in the distribution of his property. He would apparently allow this general principle of statutory construction to totally defeat and overrule the fundamental premise of our statutory scheme governing testamentary dispositions. That fundamental premise is that testamentary dispositions can be made only by complying with the wills provisions of Art. 5, Ch. 2, Title 14, and that upon a failure of compliance, the decedent's estate passes to his heirs under the laws of intestacy. *See generally,* A.R.S. §§ 14–2501 to –2513; 14–2101 to –2112.

The dissent admits that if the handwritten provisions of the will involved in this appeal were written on a blank sheet of paper, the will would not be valid. This admission recognizes that all of its material provisions are not in the handwriting of the testator. Therefore, I do not read Judge Fidel's dissent as urging that the facts of this case represent compliance with the requirements of Arizona's holographic wills statute as written by the legislature. He does not urge that "the material provisions [of the purported will] are in the handwriting of the testator." Rather, contrary to the requirements of the statute, he would look beyond the handwritten portions of the will and allow the printed portions to establish what are clearly material provisions—the donative and testamentary intent of the decedent. He would justify this result as an application of the "self-correcting capacity" of the judicial process. He would "correct" Arizona's judicial process by ignoring the statute and considering material provisions not in the handwriting of the testator. In this connection, the dissent assumes that the "surplusage theory" expressed in some earlier Arizona decisions predating the adoption of our present holographic wills statute contributes to the majority's disposition of this appeal. This conception is clearly erroneous.

Examples of earlier Arizona decisions applying the surplusage theory are *Estate of*

*Morrison,* 55 Ariz. 504, 103 P.2d 669 (1940) (construing § 3637, Revised Code 1928, which required that a will be "wholly" written by testator), and *In re Estate of Schuh,* 17 Ariz.App. 172, 496 P.2d 598 (1972) (construing former A.R.S. § 14–123, which required that the will be "entirely written and signed by the hand of the testator.") These and other early Arizona decisions voiced the concept that the statutory words "wholly" or "entirely" were satisfied when the material provisions of the will were "wholly" or "entirely" in the handwriting of the testator, and that other written or printed material could accordingly be disregarded as surplusage. This concept became known as the "surplusage theory"— that in order *to preserve the validity* of a holographic will which in the testator's handwriting sets forth all the provisions material to a valid will, the court would ignore other provisions not in the handwriting of the testator.

In Arizona, the surplusage theory is dead, since it is no longer pertinent to our present holographic wills statute, which does not contain words such as "wholly" or "entirely". In its present form A.R.S. § 14–2503 merely requires that the signature and the "material provisions" of the will be in the handwriting of the testator. Consequently, a "surplusage" theory is no longer necessary. This is made clear by the official comment to the Uniform Probate Code, § 2–503 (identical to A.R.S. § 14–2503):

> "By requiring only the 'material provisions' to be in the testator's handwriting (rather than requiring, as some existing statutes do, that the will be 'entirely' in the testator's handwriting) a holograph may be valid even though immaterial parts such as date or introductory wording [may] be printed or stamped. A valid holograph might even be executed on some printed will forms if the printed portion could be eliminated and the handwritten portion could evidence the testator's will."

Contrary to statements made in the dissent, this court's decision in *In re Estate of Johnson,* 129 Ariz. 307, 630 P.2d 1039 (App.1981) does not represent a continued application of the surplusage theory as adopted by earlier decisions construing previous versions of Arizona's holographic wills statutes. In *Johnson,* there was no contention that the surplusage must be eliminated in order to preserve the validity of an otherwise valid holographic will. The dissent does not actually advocate that this court overrule the already dead surplusage theory. That theory was merely a negative rule which precluded the negation of the testator's intent when that intent was clearly expressed in the handwritten portions of the will. Rather, the dissent would advocate the adoption of a new rule which could aptly be characterized as an "augmentation" theory, so as to allow the positive use of provisions not in the testator's handwriting to establish the material provisions of the will, a result clearly contrary to the express provisions of the statute. Not surprisingly, the dissent cites no authority which would support such a blatant dismissal of the controlling statutory provisions.

In summary, satisfying the dissent's all-consuming emphasis on effectuating the intent of the testator would require the court to disregard the clear requirements of our statutes governing testamentary dispositions insofar as they concern holographic wills. In this connection, it must be recognized that the enforcement of many Arizona statutes involving the disposition of property can lead to results completely contrary to the intent of the party making a disposition of his property. Thus, the refusal of the courts to enforce an inadequately or improperly witnessed nonholographic will can result in the complete frustration of, or in the words of the dissent, "wreak violence" on the testator's intent. However, the intent of the testator cannot suffice to overrule the formal requirements of the statutes. As our supreme court stated in *Tyrrell, supra:*

> "If the statute requires the testator to sign the instrument and he omits to sign it, though he intended to do so, such omission may not be cured by his intention. The omission is fatal to the validity of the will. The omission of any of the

requirements of the statute will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will ... and there is no question of his testamentary purpose...." 17 Ariz. at 422, 153 P. at 768.

Similar examples can be hypothesized concerning a failure to comply with statutory requirements governing the disposition or the transfer of real property for security purposes. *See, e.g.,* A.R.S. §§ 33–401; 33–701.

The dissent voices its position as a "contextual incorporation approach" purportedly so as to reach the probate statutes' "end in view." The "end in view" in Arizona's holographic wills statute is clearly stated. In unambiguous language, and when taken in context with all statutes in our probate code, A.R.S. § 14–2503 validates a holographic will as an exception to the normal requirements for formally executed wills, only when "the signature and the material provisions are in the handwriting of the testator." What the dissent actually advocates is the application of a common law approach so as to ameliorate or change the law to avoid a statutory result conceived by the dissent as unjust.

The fallacy of this contextual or augmentation approach lies in its failure to fully recognize that the principles governing testamentary disposition are not derived from the common law. As was recognized early in Arizona case law:

"In the law governing wills it is elementary that the right to make a testamentary disposition of one's property is purely of statutory creation, and is available only on compliance with the requirements of the statute.... The omission of any of the requirements of the statute will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will.... 'The courts must consider that the legislature, ... has thought it best, and has therefore determined, to run the risk of

frustrating the intentions sometimes, in preference to the risk of giving effect to or facilitating the formation of spurious wills....'"

*In re Estate of Tyrrell,* 17 Ariz. 418, 422–23, 153 P. 767, 768 (1915).

As Judge Contreras properly recognized in his concurring opinion in *Johnson, supra,* and as stated by the Arizona Supreme Court in *Tyrrell, supra,* the right to make a testamentary disposition is a purely statutory right which is available only upon compliance with the statutes. Accordingly, any changes in the requirements imposed by those statutes must be left to the legislature.

FIDEL, Judge, dissenting:

I concur in the majority's decision that the will of Edward Frank Muder fails to meet the requirements of A.R.S. § 14–2502 for acceptance as a formally executed will. I dissent from the majority's decision that the will fails to qualify for holographic validity under A.R.S. § 14–2503.[1]

To explain my view, I want first to consider what this case is not:

1. It is not a case in which Mr. Muder took a blank, unlabeled, print-bare piece of paper, wrote on it "My wife, Retha F. Muder, all my earthly possessions," signed it, and left it for the interpretation of a curious posterity.

2. Nor is it a case in which Mr. Muder signed his name to a "will to spouse" form in which the printed, distributive portion said, "I give, devise, and bequeath the entirety of my estate to my spouse."

Were this either of those cases, I would readily join the majority in finding that the document lacked holographic validity. In the second hypothetical, two material provisions—the designation of the beneficiary and the designation of her portion of the estate—are printed, in clear contradistinction to the requirements of A.R.S. § 14–2503. In the first hypothetical, though Mr. Muder has designated his wife

---

1. A.R.S. § 14–2503, derived from § 2–503 of the Uniform Probate Code, provides: "A will which does not comply with § 14–2502 is valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator."

and a quantity of his possessions—all of them—by hand, the reader can only guess what he intended for them and what he intended the document to be.

No guesswork is required for the true will in this case, a copy of which I append to this dissent. It bears in Romanesque printed letters, one centimeter high, the title, "The Last Will and Testament of _____." In the blank space following the word "of," Muder wrote his name by hand. In a printed distributive section, the form states, "I give, devise and bequeath of this my gross estate ... to _____." In the blank space following the word "to," Muder wrote "My wife Retha F. Muder" and went on to detail the contents of his estate, including the words "and all other earthly possessions belonging to me." He signed the will at the bottom over the printed words "Testator (Testatrix)". The parties do not dispute that all of the handwriting is Edward Muder's.

Muder's testamentary intent is clear and unequivocal, as the majority opinion frankly states. Yet my colleagues in the majority conclude that they must frustrate that intent. Further they acknowledge that they must frustrate a principal underlying purpose of our probate code—"to discover and make effective the intent of a decedent in distribution of his property." A.R.S. § 14–1102(B)(2), derived from Uniform Probate Code § 1–102(b)(2). Yet the majority feel compelled toward this exercise in compound frustration by the requirement of A.R.S. § 14–2503 that the material provisions of a holographic will be written in the testator's hand.

What this will needed to give it holographic validity, according to the majority, were simply Muder's handwritten words, "I leave to." These or similar words before "My wife Retha F. Muder, our home and property ..." would have supplied suffi-cient material provisions in Muder's hand to validate the will.[2] No doubt this requirement would have astonished Edward Muder. The printed form "gave, devised and bequeathed" with all the confidence-inspiring, orotund redundancy of classic legalese. To have added "I leave to" would have seemed superfluous.

My colleagues conclude, however, that all printed language must be ignored and the handwriting examined alone. Thus they treat this will as identical for statutory purposes to the ambiguous document in my first hypothetical case above. Here, as there, if we ignore all but the handwriting, we cannot know what Muder intended for his wife and his earthly possessions or whether he intended by reference to them to make a will.

The majority opinion is well grounded in precedent. The view that, on a document proffered as a holographic will, all printed matter must be ignored as surplusage is known as the "surplusage theory." *See generally* Annot., *Requirement That Holographic Will, or its Material Provisions Be Entirely Testator's Handwriting as Affected by Appearance of Some Printed or Written Matter Not in Testator's Handwriting*, 37 A.L.R. 4th 528 (1985). Arizona applied this theory before the adoption of the Uniform Probate Code and has continued to do so thereafter. Compare *Estate of Schuh*, 17 Ariz.App. 172, 496 P.2d 598 (1972), and *Estate of Mulkins*, 17 Ariz.App. 179, 496 P.2d 605 (1972), with *Estate of Johnson, supra.*

Ameliorative by origin, the surplusage theory was devised to soften the harsh impact of statutes such as A.R.S. § 14–123 (current version at A.R.S. § 14–2503 (1974)), operative at the time of *Schuh* and *Mulkins,* which required that holographic wills be "entirely written and signed by the hand of the testator." It was a way for

---

**2.** In Kentucky it would have sufficed if the decedent had merely written the word "to" before "My wife Retha F. Muder ..., etc.," but not in Arizona, where, scorning prepositional implication, we require a donative verb. Compare *Fairweather v. Nord,* 388 S.W.2d 122 (Ky.App. 1965) ("to" is enough) with *Estate of Johnson,* 129 Ariz. 307, 630 P.2d 1039 (App.1981) ("to" is not enough.) *See also Succession of Burke,* 365 So.2d 858 (La.App.1978). There, the passive infinitive adverbial phrase, "To be shared," was deemed verb enough to give holographic validity to the donative passage, "to my sister Delia ... to be shared equally with my other sister Mrs. C.A. Schreiner," written by hand in the space provided on a will form.

courts to hold that "entirely" did not really mean "entirely" and to uphold wills with content not in the testator's hand, so long as such material could be ignored as mere surplusage. Courts wielded the surplusage doctrine expressly to achieve "greater liberality in accepting a writing as a holographic will ... [so as not] to defeat what is clearly the desire of the testator." *Mulkins*, 17 Ariz.App. at 181, 496 P.2d at 607.

A similar ameliorative purpose underlay Uniform Probate Code § 2–503 (our § 14–2503), which substituted for the traditional "entirety" requirement the lesser requirement that the "material provisions" of a holographic will be in the testator's hand. Yet in promoting a statutory departure from the requirement of "entirety," the drafters of the Uniform Probate Code gave ongoing currency to the surplusage theory, writing in their comment to § 2–503:

> By requiring only the "material provisions" to be in the testator's handwriting (rather than requiring, as some existing statutes do, that the will be "entirely" in the testator's handwriting) a holograph may be valid even though immaterial parts such as date or introductory wording be printed or stamped. A valid holograph might even be executed on some printed will forms if the printed portion could be eliminated and the handwritten portion could evidence the testator's will.

The comment's proposal that the printed portion of will forms be eliminated is precisely the approach that it be ignored as surplusage. The *Johnson* court recognized as much, interpreting the comment to mean that the use of a will form "does not invalidate what would otherwise be a valid will if the printed words may be entirely rejected as surplusage." 129 Ariz. at 310, 630 P.2d at 1042 [3].

The last sentence of the comment to Uniform Probate Code § 2–503 was both gratuitous and unwise. Though application of the surplusage theory enabled courts to effectuate testamentary intent when interpreting statutes such as A.R.S. § 14–123 (1956), its application now causes the frustration of testamentary intent under statutes such as A.R.S. § 14–2503. In *Johnson*, 129 Ariz. at 312, 630 P.2d at 1044, Judge Contreras wrote in special concurrence that to entirely ignore the printed portion of the will achieved an "illogical result which defeats the intent of the decedent...." Judge Wren acknowledged for the court that the decision "might well do violence to the intent of the decedent...." 129 Ariz. at 311, 630 P.2d at 1043. This court now cushions its rejection of a will in similar apologetic terms.

Such ongoing testamentary frustration, in my view, is altogether unnecessary. Among the great strengths of our judicial process is its capacity for self-correction. James Boyd White describes judicial opinions as a "self-reflective, self-corrective body of discourse" in *When Words Lose Their Meaning* 251 (U.Chi.Press 1984). This capacity for self correction is not limited to common law doctrines of judicial origin. It extends to judicial theories such as the surplusage theory devised for purposes of statutory interpretation. Because the surplusage theory has outworn its original, ameliorative purpose to become harsh and injurious in effect, I believe that a correction is overdue.

The will in this case and the document in my first hypothetical are not identical. The law is preposterous which treats them so. The difference is one of context. The words "My wife Retha F. Muder, all my earthly possessions" on a blank piece of paper have no testamentary context. The testamentary context of those same words, when written on a will form in a blank space provided after the printed words "I give, devise and bequeath ... to," could not conceivably be clearer.

I suggest that, in interpreting A.R.S. § 14–2503, the law can productively distinguish between distributive content and tes-

---

**3.** Judge Haire's comment in concurrence that the surplusage theory is "dead" and that the *Johnson* case does not apply it is contradicted by the explicit language of *Johnson* itself. It is likewise contradicted by the majority decision in this case. The majority here, as in *Johnson*, rejects the will's printed language as surplusage and, having done so, finds the remainder lacking in testamentary context. The surplusage theory is alive and well in Arizona.

tamentary context. I do not believe that a will form can provide distributive content for a holographic will. A testator who resorts to holography must designate his beneficiaries and apportion his estate among them by his own hand. I would hold, however, that when a would-be testator designates his beneficiaries and apportions his estate among them in the spaces provided on a printed will form, his handwritten distributive provisions constitute the necessary "material provisions" of the will and can draw testamentary context from the printed language on the form.

I do not propose, as Judge Haire suggests, that the court ignore the express provisions of Arizona's holographic statute. I do propose that we reject the suggestion in the comment to Uniform Probate Code § 2–503 that, when a holographic will is attempted on a will form, the printed portion be entirely ignored. I likewise propose that we reverse the *Johnson* refusal to attribute contextual significance to the nature of the printed document upon which a testator writes the distributive provisions of a will.

A.R.S. § 14–2503 does not define "material provisions;" nor does it state that courts, when examining a proffered holographic will, must close their eyes to the formal context of the decedent's written words. In my view the language of A.R.S. § 14–2503, taken alone, can equally support the surplusage approach of *Johnson* or the contextual incorporation approach that I propose. The language must not, however, be taken alone. Justice Cardozo wrote, "the meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view," *Panama Refining Co. v. Ryan*, 293 U.S. 388, 439, 55 S.Ct. 241, 256, 79 L.Ed. 446, 468 (1935) (Cardozo, J., dissenting). We need not look far for our probate statute's "end in view." A.R.S. § 14–1102 sets forth its purposes and the rule by which it is to be construed. Section 14–1102(A) provides: "This title shall be liberally construed and applied to promote its underlying purposes and policies." Subsection (B)(2), as I have previously indicated, lists among the underlying purposes

and policies: "To discover and make effective the intent of a decedent in distribution of his property."

Both the *Johnson* court and my colleagues in this case concede the "violence" wreaked on the decedent's intent by application of the surplusage theory. I propose we stop the violence, construe § 14–2503 liberally as required by § 14–1102(A) and (B)(2), and permit a holographic will to draw testamentary context from a printed will form where the material provisions— i.e., the designation of beneficiaries and apportionment of estate—are written in the testator's hand. Such an approach would not diminish the reliability of holographic wills. A holographic will is admitted to probate because:

> a successful counterfeit of another's handwriting is exceedingly difficult, and ... therefore the requirement that it should be in the testator's handwriting would afford protection against a forgery....

*Mulkins*, 17 Ariz.App. at 180–181, 496 P.2d at 606–607, quoting *Dean v. Dickey*, 225 S.W.2d 999 (Tex.Civ.App.1949). Mr. Muder, having signed what he intended as his will and having gone to some detail in designating his beneficiary and describing his estate by hand, would not have magnified the difficulty of counterfeiting his handwriting by adding the words, "I leave to."

Incorporation of matter not written by the testator is no stranger to the law of holographic wills. Courts have accepted as valid holographs wills that incorporated typed or printed documents by reference. *See, e.g., Estate of Nielson*, 105 Cal.App.3d 796, 165 Cal.Rptr. 319 (1980). (*See generally* 79 Am.Jur.2d § 703, pp. 782–3). The requirements for referential incorporation of an extrinsic document are (1) that the document be in existence at the time of the will's reference; (2) that the will describe the document with sufficient certainty; and (3) that it appear that the testator intended incorporation to effectuate his testamentary desires. *Nielson*, 105 Cal.App.3d at 803, 165 Cal.Rptr. at 323. Though contextual incorporation, unlike referential incor-

poration of extrinsic documents, is a new approach as far as I can tell, it appears to satisfy or obviate each of these criteria.

Finally, I believe our amelioration of the harsh effect of the *Johnson* surplusage approach would accommodate the law to the present reality of increasing usage of legal forms. Self-help will drafting, like other forms of self-help law, is greatly on the rise. Laymen resort to will forms, as Mr. Muder presumably did, to effectuate their testamentary intent in proper legal terms. If such persons would first consult the comment to UPC § 2–503 or review the *Johnson* case, they would learn that the law would generously permit their use of a legal form, so long as they used it for nothing more than a blank piece of paper, ignoring everything printed on it. It is unlikely, however, that will form users carry their research to this degree. Likewise, if such persons would consult a lawyer, the lawyer would probably advise them not to employ the printed language of the form or, alternatively, to do so only in full compliance with the formal execution requirements of A.R.S. § 14–2502. Will form users turn to forms, however, presumably to avoid paying a lawyer's fee. Our law at present sets a time bomb in their wills. The surplusage doctrine is the bomb. Sadly, when it explodes, the will form user, like Mr. Muder, is not around to pick up the pieces.

APPENDIX

# The Last Will and Testament

OF

_Edward Frank Muder_

I, _Edward F Muder_, a resident of _Shumway, in the County of Navajo, State of Arizona_, the _____ of _____, which I do declare to be my domicile, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament, hereby revoking all wills or codicils to wills previously made by me.

FIRST: I direct that all my just debts and obligations, including funeral expenses, and the expenses incident to my last illness be paid as soon after my death as practical.

SECOND: I give, devise and bequeath of this my gross estate, after all of my just debts, expenses, taxes and administration cost of the estate have first been paid, settled or compromised, to _of my wife Retha F Muder, Our home & property in Shumway, Navajo County, Car - Pick up, Travel Trailer, & all other earthly possessions belonging to me, Livestock cattle sheep etc Tools, Savings Accounts Checking Accounts, Retirement Benefits Etc._

THIRD: I nominate, constitute and appoint my _Wife Retha F Muder_ _____ as Executor (Executrix) of my estate.

FOURTH: I nominate, constitute and appoint my _Wife Retha F Muder_, _____ as guardian of the person and property of each minor child of mine who shall survive me.

IN WITNESS HEREOF, I, _Edward F Muder_, the testator (testatrix), sign my name to this instrument this _26th of_ day of _January_, 19 _84_, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my last will and that I sign it willingly, that I execute it as my free and voluntary act for the purposes therein expressed, and that I am eighteen years of age or older, of sound mind, and under no constraint or undue influence.

_Edward F Muder_
TESTATOR (TESTATRIX)

—————————————————————, ————————————————————, the witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that the testator (testatrix) signs and executes this instrument as his (her) last will and that he (she) signs it willingly, and that each of us, in the presence and hearing of the testator (testatrix), hereby signs this will as witness to the testator's signing, and that to the best of our knowledge the testator (testatrix) is eighteen years of age or older, of sound mind and under no constraint or undue influence.

_Betsy Daniels Epr_____ resides at _____

_____ resides at _____

_____ resides at _____

_____ resides at _____

### ACKNOWLEDGEMENT*

STATE OF _Arizona_ )
COUNTY OF _Maricopa_ )

SUBSCRIBED, SWORN to and acknowledged before me by, _Edward F Muder_____ the testator (testatrix) and subscribed and sworn to before me by _Edward F Muder_, _____,

_____,
the witnesses, this __26__ day of __February_____, 19_84_.

_Helene P. Mutley_____
SIGNATURE OF OFFICER

_Notary_____
OFFICIAL CAPACITY OF OFFICER

MY COMMISSION EXPIRES:
My Commission Expires Mar. 1, 1986

My Commission Expires Mar. 1, 1986

* NOTE: This is a Self-proved Will

© 1979, Alpha Enterprises — P.O. Box 26324 — Tucson, AZ 85726